Mr. McClanahan for the appellant, Mr. Yellen for the appellant. Mr. McClanahan for the appellant, Mr. Yellen for the appellant. Mr. McClanahan for the appellant, Mr. Yellen for the appellant. Mr. McClanahan for the appellant, Mr. McClanahan. May it please the court, my name is Kel McClanahan. I am representing myself and Corey Crider in this FOIA case. This case is a pretty straightforward case when it boils down to it. The FBI, as far as everybody can tell, engaged in litigation misconduct in a case. And when I filed FOIA requests for information to demonstrate that, they threw every procedural trick they could at the request and at the district court and at this court to avoid acknowledging that misconduct. They did improper searches. They used improper cutoff dates. They searched for the wrong terms. They withheld information that had been previously disclosed. They filed things in camera just as a matter of procedure without ever once asking the court's permission. Everything they have done in this case is a cautionary tale for how not to litigate a FOIA case. And now they're here asking this panel to affirm that decision. And so because this has a lot of different moving parts, I will just address things very quickly unless there are particular areas that the panel wishes to discuss. Starting with probably the easiest matter, the ex parte declarations. Likens and various other cases from various other circuits make it clear that when you wish to file something in camera, you have to file a motion. You have to give the opponent a chance to oppose it, and then the judge has to rule on it. Local rule, local civil rule 5.1J1 even states that if something is filed without a motion to seal, it will be filed on the public record. I couldn't find any place in the district court where you raised the local rule. Did you? The sealing mechanism or the in camera? Yes, Your Honor. The first time they filed it, I filed a motion to strike. You motioned a motion to strike, but did you invoke the local rule? Pardon me? Did you invoke the local rule? I do not recall, Your Honor. Well, I asked you the question because I didn't see it in there. If I'm wrong, you should tell me. I do not recall, Your Honor. Sorry. But you agree if it isn't there, you can't rely on it here, right? No, Your Honor, because the local rule states that it shall be filed. You can't raise arguments here you haven't raised in the district court. That's my point. And in any event, I get your point that they didn't file a motion for permission to file a sealed, a classified declaration. But even if that was wrong, you moved to strike it, right? I moved to strike the first one. Yes, so you got your shot at it, right? Even if they made a mistake or should have done it, you had an opportunity to challenge it, right? Your Honor, that is not correct. I had an opportunity to move to strike it. However, that's not what the law requires. The law requires that they file a motion to file it. I should not have had to file a motion to strike it. I was just asking you whether or not even if they should have filed it, the failure was harmless because you filed a motion to strike and had an opportunity to challenge the submission of the declaration. And even if we were to accept that reading, that would only apply to the first in-camera declaration, not the second or third, where they just filed more notices and the judge never even affirmed it, never even accepted it until my opposition for summary judgment. I said, and I renew my objection to the filing of these things in-camera without permission. And she said, for the same reason as before, I find that they have still shown that it's necessary to file in-camera, which they never did. That was the other thing that the court aired when she stated that these were shown to be necessary for the resolution of the case because the FBI did not show anything. They just filed it. They did not justify it, did not give any reasons on the public record. They may have given reasons in the in-camera declarations, but in-camera declarations can't have legal argument. That's another reason that these should have not been allowed because everything that the FBI filed on the public record was filled with legal argument. And the arguments for some of the points that the judge relied on were solely made in the in-camera declarations. And the brief would say something like, for the reasons shown in the in-camera declaration, you should grant this exemption claim, and then it moved on to the next topic. So there are myriad reasons, but the most pressing reason is the process is clear. Everyone can file a motion to strike. The fact that everyone can file a motion to strike does not make it any less improper for them not to file a motion for leave. I assume you started with this argument about the filing of the classified declarations because you think it's your strongest, right? Not necessarily. No? I'm sorry. What's your next strongest argument? Well, it's not necessarily. You're right. There's lots of arguments here. It's not necessarily the strongest. It is the thing that has the most effect because if you strike those, you can't affirm any of the B3, B5, B6, B7C withholdings because they were based on the classified declarations. The search issue is probably the next most pressing issue, and this has a few different parts. Number one is this all boiled down to, as I said, in the previous case, in the Mobley case, I came into possession of information that the FBI said was classified. I said it was not classified. I said that my client had gotten it from a public source, and they said because it's classified, you are bound by a nondisclosure agreement from revealing it. That's part of this whole procedural nightmare is that I'm bound by a nondisclosure agreement, so what I can tell you is limited, even though I still say it's not properly classified. So when I filed a FOIA request for information about me, my firm, the investigation number, or the information that I'm alleged to have possessed, the allegedly classified information, they did a search based on my name and the name of my firm, and they say that, well, when they told Judge Howell that they had found no evidence to support my official disclosure theory, and I clearly aimed this request at getting how they looked for that evidence. First they said, well, that's not what he meant. He meant that there are no markings on it, which was one of the two reasons Mr. Argo gave and one of the two reasons the district court decided. Then they later shifted gears. They're doing a bit of a moving target on this and say, oh, well, even if we had done an investigation, records about that would be beyond the scope of this request because it's clearly only about Mr. McClenaghan and National Security Counselors. It wasn't. The plain text of the request had four parts in it, information about me, information about my firm, information about the investigation number they assigned to it, and information about the document that they say was classified. Item four would encompass records created that did not have my name in it. My FOIA request even said my name will probably not appear in all these documents, but they didn't look for that. They also did this bizarre thing with a cutoff date where when they got the request, they did some kind of cursory search before immediately invoking a B7A categorical denial, and then we fought that for two years, and the judge ordered them to go and do a real search, and they did a real search, and they did a cutoff date of the date of the very first search two years earlier. That's not how cutoff dates work. You're doing a cutoff date as of the date of the search, not as of the date of the first search, and that's pretty much all I have to say about search. Going through the exemptions, I'm not really going to dive into B5 or B6 right now unless you have questions about it, but B3, again, it's based on the in-camera declaration, so if you strike those, then that's done. It's not FBI information. All of the classified information, all of the information withheld, allegedly classified information, all of the information withheld under B3 or much of it is information that I provided to the FBI and I provided to the district court to show that it was not properly exempt, and the district court agreed that the information could be filed on the public record, and the district court agreed that by definition this information is already available to the public. That's a quote from her opinion. That's the stuff they're trying to withhold now, and they're saying, well, it wasn't FBI that officially disclosed it. It was the CIA. That doesn't matter. It was CIA article titles. It was an investigation about CIA classified information, and this is not FBI's fight, and they can't, even if they could argue that it wasn't their information, it's irrelevant because it's been previously ordered available to the public by the judge, and their main thing, and I'll stop on this since I see I'm running out of time and cutting into my rebuttal. They say that when I referred in my arguments to my previous declaration in the other case, in the NSC v. CIA case, that required the judge to root around in the record. No, it didn't. I wasn't able to state in my brief in this case what the classified information was because of my nondisclosure agreement. That's the problem. I did the closest thing I could without violating my nondisclosure agreement. I pointed her to the publicly available document that had the information because she had only authorized me to reveal that information in the context of that case. By the way, just one quick question on the cutoff date. Couldn't you just file another FOIA request for everything after November 1? I could, Your Honor. So why do we have to deal with all this? Because everyone can always file a new request when faced with an inadequate search. But if you had done it a year ago, you probably have the information by now. That's possible. But you could. I could. I probably would still be in front of you in a couple years over different arguments like the search. But, yes, I could have filed an FOIA request. It might be a different panel. I'm sorry, I didn't hear that. You mean before this very panel? Is that your point? I'll be before the circuit probably. Well, you don't know that. Well, most of these other arguments would apply to a new request as much as they would apply to the old request. And, honestly, with respect to the Court, the fact that I can file any FOIA request doesn't mean they performed an adequate search. I understand that. Thank you, Your Honor, unless you have any more questions. All right. Mr. Yellen. Good morning, Your Honors. May it please the Court. I'm Lewis Yellen from the Department of Justice here today on behalf of the Department. I'd principally like to answer any questions the Court has, but before I do that, if I may, I'd like to address just one point that Mr. McClanahan raised in his opening argument. That is about this point that I'm going to address goes both to the B-3 argument and to the scope, the terms and the scope of review argument. Mr. McClanahan is conflating two different types of classified information. He's principally, in his presentation to this panel, he referred to classified information that was at issue in his earlier case that was called National Security Counselors. That was information that he purported was CIA information that was classified, and he was subsequently interviewed by the FBI about that information. This particular suit involves a FOIA request to the FBI about classified information, and the FBI conducts investigations when persons who are not authorized to possess classified information may be in possession of classified information. Mr. McClanahan purports that the information that's classified in this case is the same information that was at issue in his earlier case. That is factually incorrect. If the Court looks at JA-74, this is the first hardy declaration, paragraph 54, the declaration explains that with respect to the B-3 exemption, the declarant determined that the FBI's intelligence sources and methods would be revealed if the withheld records were disclosed. That is, the FBI's sources and methods would be disclosed. The point that I guess I would like to make, Your Honors, here, or that I would like to underscore, is that there are two separate sets of classified information. The one that's at issue in this case is classified information that was generated by the FBI in the course of the national security investigation that's separate from the CIA information that Mr. McClanahan was referred to. That goes to both the B-3 argument and to the scope argument because Mr. McClanahan's request for information referred continuously at many points to any of the classified information I possessed, which in the context of the overall request, the FBI reasonably construed, liberally, I might add, but reasonably construed as records concerning McClanahan's possession of classified information. With that, Your Honors, I'd be happy to take any questions the Court might have for the government. I don't see how your scope is reasonable in the district court's view of the records about any investigation of McClanahan. That's not what he asked for. He asked for any classified material he possessed. It may or may not have been a record about him. And it's very different from the prior request, which is a copy of records about her. So I agree it's different in that respect, Your Honor. I think materially so, and then the district court's restatement of his request consistent with what you were arguing is not the same request he made. So, Your Honor, I guess we may have a difference of agreement, and obviously, Your Honor, this is quite— It's not a difference of agreement. I'm looking at the words. Well, if I might, the words refer, the opening paragraph of the request sets out the background for this request. It refers— The request is any of the classified information he possessed. He sought records pertaining to any of the classified information he possessed. That's not about him. Which the FBI construed, if I might spin this out, Your Honor, the FBI construed as records concerning McClanahan's possession of classified information. Why are you entitled to construe it that way? Because— The case law says you can't narrow down someone's request to self-servingly not— Absolutely. We don't dispute that. The government has an obligation to liberally construe— So then how do you get to where you got? Your Honor, the opening paragraph of the request, if I might read for just a moment from this, in 2012, the Federal Bureau of Investigation conducted one or more investigations pertaining to me involving my possession of classified information in the context of two federal court cases. I'm skipping a bit. Some of the records would mention me or my law firm, national security counselors by name. Later on, the repeated request is information, and I'm again quoting, pertaining to me, national security counselors, any case numbers assigned to the above investigations, or any of the classified information I possessed. So I would—Your Honor, I don't think that fairly read, that is a request just for any record having to do with classified information. There are three different categories within that sentence that you just described. Agreed. And they're not the same. I completely agree, Your Honor. And one is classified information. The information— That I possessed. I think—so the emphasis— But not—the record doesn't have to have—be about him. It can be a record about information that he possessed. It doesn't have to be about him. It's about the information. Your Honor, I grant that there may be a logical reading of that. I do not think, though, however, that the logical possibility means that it's a liberal or reasonable construction of the request in light of the fact that this request was given to the FBI specifically referencing the two prior litigation cases, saying that the request concerns records about those two prior cases. And in the context of this request, Your Honor, the FBI understood this to be a request about the record— About the record. That's right. in his possession, Your Honor, not about the records unhinged from any connection to Mr. McClanahan's possession. But he was looking for records involving the possible investigation of him, right? That's the way you read this. Yes, Your Honor. But setting aside even if those few words weren't enough, I mean, it's possible that an investigation of Mr. McClanahan might not have his name in it yet. It might talk about the suspect or the accused, yet that document would come up if he searched for the underlying classified documents, right? That's his point. I don't see how. That's his point. Yeah, absolutely. I mean, you can't doubt that. That's clear. I think, Your Honor, I don't know that that is not consistent with the declaration— that you could pull that document even though his name might not be mentioned. He might be referenced or alluded to in a different way, right? What I'm suggesting, Your Honor, is that that hypothetical, which I agree is a logical possibility, is not consistent with the declaration that the FBI provided about the way in which it creates records. The declarant, if I might look, I'll see if I can find, Your Honor, an exact quotation. You can't pull by reference to a document? No, Your Honor. I'm sorry. I'm saying something very specific. Okay. Judge Tatel was suggesting, I think as a logical matter, quite plausibly, that it is conceivable that there could be a record about a suspect in general in possession of classified information, and a search of the classified information would pull that record. Right. I do believe that that is possible. I think the declaration in this case, however, gave a different explanation for the FBI—how the FBI creates records and the likelihood of finding records pertaining to Mr. McClanahan. And I think that— What did it say exactly? Well, this is what I'm— Okay. I'm looking for, Your Honor. Okay. And I may—I obviously don't want to keep the Court here waiting while I look. No, no, no. I— I may need to follow up with the letter if that would be permissible. Let me see if I can find it quickly. Okay. Your Honors, I'm not finding it immediately. If I might follow up with a very brief— Let me ask you a question and tell me if I'm viewing this wrong. He asked for classified information I possessed. Not records, but classified information. All right. Let's say in that classified information he possessed, the statement was, a Yemen official named Joe Jones killed another Yemen official named Sam Smith. Is he—he's claiming that you should then look up Sam Smith and Joe Jones to see if there's any information on them. That's the way I am reading his request. It has nothing to do with him. It has nothing to do with any investigation of him. And I don't know where the logical stopping point would be. If everything in the classified information that he possessed, you had to run down by whatever way you could do it, by names in the classified information or by dates or something, where the stopping point would be. Well, Judge Henderson, I think you put well some of the background reasoning that the FBI employed to reasonably construe, in our view, in a liberal manner, the request. If a—if one employs a hip bone is connected to the leg bone is connected to the knee bone sort of approach, as Mr. McClanahan seems to be suggesting, there would be no reasonable stopping point. And so the FBI understood the request for records concerning the classified information I possessed to provide. What reasonably is this requester seeking? Let me make sure I'm understanding you. Why does a request for documents that you have an indication I possess means that you also have to search with respect to all the content in that document? I don't see how that follows. Or is he just saying classified information that I possess, whatever it was about, I don't care what's in it, I don't want you to search that, I just want to know, I want to have those documents, whatever you think I possess. They may or may not have been about me, that's all. Why is that overly broad? Well, as I read, Mr.—I think I should say what I'm going to—about to explain is our understanding of Mr. McClanahan's briefing in this case. Obviously, he would be in a better position to state precisely whether we've understood this correctly or not. But I do understand him to be suggesting that part of the problem with the government search is that it stopped far short of searching everything that was potentially connected to the classified information. And that I don't—we don't understand him to be saying that it wasn't enough that you searched for my possession of classified information, you had to independently search for any references to the classified information itself. And so it's not—the stopping point isn't just— References to the content of? Yes. References to— Any conceivable references— Within. No, I mean, we're talking past each other, I think. You're talking about references within those— If there are cross-references to the classified information that you requested. As opposed to, I just want to know what documents you think I possess. Correct. Whether or not I'm in them, just what documents that I possess. We understand, and again, Mr. McClanahan's in the best position, but we understand his briefing to suggest that the government had an obligation to find any cross-references to the classified information and to evaluate those for production. And such a request would be incredibly broad. And so we understood, the FBI understood this request to be specifically, as Mr. McClanahan said in the opening paragraph of his request, in connection to the two previous cases that he was involved with and his possession of the classified information. I can say— And didn't you give him that? And didn't you give him that? Anything that was not properly withheld, we gave him. That's right, Your Honor. And I should say, Your Honor, we are not imposing any Herculean burden on a requester. If Mr. McClanahan genuinely wanted, as he's now saying, the classified any records concerning the classified information, regardless of his possession of it, that is, to be very precise, records that did not address both the classified information and Mr. McClanahan's possession of that classified information, he could have— Well, the reference, at least the one that I'm looking at, clearly talks about his possession of it. I understand. And he could have had—and this is not to say the government doesn't have any obligations to construe liberally. We do. But in the context of this letter, if he wanted to make it clear so that a reasonable reader would understand that he wants the classified information, even apart from any records concerning the investigation of him having classified information, he could have had, comma, whether or not the records involved the investigation of me or not. This is a person who is a frequent FOIA requester and a frequent FOIA litigator. He knows that it is his obligation to provide clear requests to the government, which the government has a duty to interpret liberally. But he still has to provide a clear request to the government, and the government here did its best to understand the scope of his request in light of the background litigation that Mr. McClanahan identified in the opening paragraph and in light of what the FBI understood to be his interest. And again, as soon as it became clear in litigation that there was a difference of opinion here, this litigation has now been going on for many years, and Mr. McClanahan knows the government's understanding. I'm not saying that as a legal matter he can't continue to press that under his contrary view in this matter. Of course he can. He could have also, as Judge Tatel suggested a moment ago, file another FOIA request asking for exactly what he's seeking now. Roberts. Well, but as he said that, I mean, I asked that about the cutoff only. As he said, that doesn't mean that. I mean, if that were true, we wouldn't ever have to decide FOIA cases. Well, that's why I gave the caveat, Your Honor, that, of course, Mr. McClanahan can continue to press the legal argument here. He has every right to do so, and this Court should properly decide whether the government reasonably construed it or not. My only point is that you said there's something actually in the declaration that will help us. I believe there is, Your Honor. I will search the declaration, and I will file a very short. Or just maybe you could look it up. I'll be happy to do that. Mr. McClanahan is doing his rebuttal. Yes, Your Honor. Let me try one more time. Let's say the classified information that he possessed consisted of five pages. He asked for you to search. You gave him – well, you searched those five pages using his name, his firm's name, the case numbers. My understanding of what more he wants is for you to take those five pages, and if they mention something that has nothing to do with him or his firm or the case numbers, then search those records and produce those records. Or am I – is that how – I'll ask him if that's his decision. So I think there's a both and. We do understand Mr. McClanahan to be asking for that. All right. But we also understand Mr. McClanahan. I think as – I believe it was Judge Tatel put a moment ago, imagine that the FBI has a record that refers to those five classified documents, but apart from Mr. McClanahan entirely. That is for other purposes. No, just an investigation of – I thought what he was requesting, and we can ask you this, but I thought what he was looking for was any documents relating to the investigation of how that – those two classified documents got in the hands of Mr. McClanahan. That's what I thought he was looking for. And I thought his point was, well, you know, those documents might not mention my name because they might refer to the accused or the person we're looking into or something. Isn't that what he's looking for? So, Your Honor, the FBI understood the request the same way. Okay. And FBI understood its research methodology to produce the documents that Mr. McClanahan was seeking so understood. Ah. Okay. I'd love to see that part of it. I'll do my best to locate it and provide the Court with an updated letter. All right. And also opposing counsel. I'm sorry, Your Honor? And also provide – Oh, yes, of course. Of course, Your Honor. Okay. Thank you, Your Honor. Thank you. Does Mr. McClanahan have any time? Yes, he has two minutes remaining. Okay. Do we understand your request correctly about this issue? Partially. You moved between two different interpretations and – Well, why don't you just tell us? Okay. I did not ask for – I'll just focus on the fourth line item, which is what we're really arguing about. I didn't ask for information that was in the classified documents. Yeah, I didn't say you did. I asked for records about the classified documents, as in I asked for records about the FD-302 form. Specifically, that would have encompassed, A, the FD-302 form. The actual form itself was never turned over because it didn't have my name in it. Well, of course it didn't have my name in it. It was the document that I got. And I asked for records about, and I'll focus on that for a second, the 302 form because the 302 form, as we showed to Judge Howell, was given by an FBI official to a Umini official to the Umini court to us. And any investigation of how I got it would have to look at how the person who gave it to me got it and how the person who gave it to them got it. And if we want to talk about the context of those two cases, the record in those two cases was explicit that I was arguing that that document was given to the Uminis. And when I asked for records about that document in the context of that case, it clearly encompasses how that document got out of FBI custody in the first place. It's not a fishing expedition for every... I have to tell you, when I read your FOIA request, I mean, it just read to me like it read to the FBI. That is that you're looking for documents about you, about the investigation of you. Now, when I read your brief and I saw, well, there are these couple of words there, then I saw your point. But the impression of your whole FOIA request from the introductory material to, you know, to your request for information you're looking for, you're looking for any subpoenas or warrants about you, any case numbers assigned to you, it all seemed to me to be about you, investigations about you. So if I had been the FBI, that's what I would have looked for. As Judge Edwards pointed out... I understand your argument. That's why I asked the government, isn't it logical that maybe a document that didn't mention you was still about the investigation of you, right? Yes, Your Honor, but that's not the only point. Wait, what did you think I pointed out? Oh, well, as you pointed out... Maybe that will help me better understand what your argument is. There were four categories of information in this request. And they are saying, and Mr. Yellen has just said, that I can file a request for records about the classified information. Well, that is saying that I can also file a request for records about A, me, B, and a C, C, an investigation number, or D, the classified information. And that is a form of... The classified information meaning what? You can't go to an agency and say, I want you to disclose the classified information. That wouldn't mean anything. I said I wanted the agency to disclose FBI records about the specific classified information that the FBI accused me of having.  Wait, wait, hold on. You mean anything or just anything referring to the investigation of how you got... I would say anything because there aren't going to be a whole lot of records. How can they do that? I mean, how's that got to do... I mean, that would produce things that have absolutely nothing to do with you. Your Honor, that is speculation. Well, you're speculating more than I am. I get your point that records about the investigation of how Mr. McClanahan, i.e., you, got this. I get your argument about that, but I don't get your argument about any document having to do with the classified information. I don't see why, since what you're looking for is you're trying to find out whether there was an investigation of you. I mean, there could be documents that have nothing to do with the investigation. Your Honor, you may be right that there would be documents in there that are unrelated to me. It's not even logical. You may be right, but that doesn't mean that it's not a reasonable request. It's not logical. And it was very telling that Mr. Yellen stated, paraphrasing, that the fact that Judge Edwards' reading is logical doesn't mean that it's covered by a liberal reading. Well, how can a logical reading not be covered by a liberal reading? And he later on says that a reasonable reader could not construe it that way. Well, if it's logical, how could a reasonable reader not construe it that way? That is the problem. I requested a four-point request. Why didn't you ask for records covered by your nondisclosure agreement? Because I already had those. I don't need the actual classified documents. I have them. I know it's in them. That's how I'm able to say that the B-3 arguments are flawed, for lack of a better word, because I sent the e-mails. And I can tell you that it is the same information. Contrary to what Mr. Yellen said, pages McClenahan 3, McClenahan 4, and McClenahan 2-1 are subject lines and titles of e-mails that I sent the FBI. It was not new FBI intelligence sources and methods. It was information that I copied and pasted from studies and intelligence articles that were published. Any more questions? No. All right. Can I hit one minor point to address something that you said that was mistaken? All right. With respect, you brought up Joe Jones and Sam Smith, and you talked about was I looking for everything on Jones and then everything in Jones's file about somebody else. I think I addressed that already by saying it wasn't looking into requests. It was looking outward. Got it. The other thing, though, is there are two things here that they're asking you to argue that— That's it. That's it. Your time's up. Okay. Stand in.
judges: Henderson, Tatel, Edwards